Mr. Lynch appearing for James Leon Guerrero, and I must admit that I am here riding on the coattails of my client because it was his 2255 motion that prompted the court to grant him a certificate of appealability after he took a direct appeal to this court for his conviction. Mr. Leon Guerrero's principal argument to this court is that he did not voluntarily relinquish his right to testify in his second trial. In its ruling on James' 2255 motion, the trial court found certain indicia and said basically that trial counsel merely recommended that the defendant not testify, but did not prevent the defendant from testifying. Mr. Leon Guerrero's fundamental right to testify should have gotten him more than a recommendation. Counsel was under an obligation to him to thoroughly and completely discuss the advantages and the disadvantages of testifying in the second trial. He testified in his first trial. He had an alibi defense and he brought two witnesses in the first trial and was acquitted of the other conduct. He was not acquitted of the conspiracy. The jury could not reach a verdict on the conspiracy, hence the second trial, merely on the conspiracy for armed bank robbery. The judge basically accepted the government's argument in the 2255 and said the outcome of the trial would not have been different if James had testified. That is merely speculation because we have the first trial where James testified with his two alibi witnesses and the jury acquitted him of three charges. The only difference in the second trial was there were no defense witnesses and James did not testify. Counsel basically abandoned the alibi defense. And the reason he did that was because James didn't play into his second tactic. He had to prove that James coerced the co-conspirators in such a way that they could not have willingly entered into a conspiracy with him. The case law is the reverse. You said conspirators. In the indictment, who were the co-conspirators? Wasn't it only one other person? The co-conspirators testified. The other individual... Who was named as co-conspirators? Dominic Uggen was the co-conspirator in the armed bank robbery. But that's the only co-conspirator, right? Well, the other individuals who testified were three other individuals who were charged with armed bank robbery, not with conspiracy. They testified that they participated in the bank robbery. They all fingered James as the leader, the person who planned the robbery and executed the robbery. The problem with their testimony and the problem with counsel's trial tactic in the second trial was using all of the testimony against him put him in a situation where he was subject to the enhancement of the three strikes law. Well, it doesn't sound like a defense that had much chance of succeeding, but neither does any other defense. Well, the problem is that James didn't have a say in whether or not he testified. His counsel didn't tell him he was not going to testify until the defense was about to rest. That problem, throughout the trial, James thought that he was going to testify. I submitted in the supplemental excerpt a letter from James to his trial counsel just before the trial where he still thought he was going to take the stand and testify to explain the two prior attempts. Basically, the reason that the jury convicted was there were two prior attempts and then the actual robbery. James wanted to explain that. His alibi witnesses, he expected to explain that at least on one of those occasions he was with one of these individuals. James felt intimidated by the judge. A defendant relying on his counsel can rely to a certain point. The fundamental right to testify, however, is something that has to be explored completely. It's our right to give over to trial counsel the decision whether to cross-examine a witness or not, the decision whether and when to object. But the decision on whether a defendant testifies should not be left up to trial counsel. Mr. Tecker basically took it upon himself to make that decision without completely discussing it with his client. James, as a seasoned courtroom person based on his prior convictions, might have stood up in court and said, I want to testify. But remember in the pretrial conference held in the judge's chambers prior to the first trial, the judge told him, if you are disruptive in my courtroom, young man, I will have you removed. This intimidation carried throughout the trial. James claims that his attorney told him he was not going to get a fair trial from this judge. So there's intimidation from the judge, trial counsel not discussing his full strategy, and he's forced to rely on his counsel to his detriment. The problem with defense counsel strategy, and it may have been his only option, but the problem was he had to basically admit that James was a violent person. And by admitting that James was a violent person, he put the gun in his hand that was used at the robbery. By doing that, he set him up for the enhancement. The last issue that I want to bring to the court's attention is that during the sentencing phase, counsel said nothing. He said nothing. The judge made no findings of fact as to the two prior convictions or as to the use of the gun in the armed robbery conviction for conspiracy. That in and of itself should merit a reversal because we have a life sentence versus a five to ten year sentence. James has already served five years. His original conviction was in 1997, and he began serving in April, pre-trial. So by this time, by today, he's already served a sentence he would have been subjected to but for counsel's actions at trial and at sentencing, inactions at sentencing, basically. The remedy we're asking is... I'm sorry. He was basically stuck. He put himself against the wall. Well, he could have argued that the conspiracy against rights might not have been a strike that the court could use. And this court has said in Kelowna that the use or possession of a firearm is the indicia that is used in a robbery. James' first conviction was for robbery. There's simply no findings of fact. Certainly on the first conviction that James has for robbery in 1987, I believe it is, the judge could have found that he used a weapon that would have satisfied the statute. The second conviction, conspiracy against rights, that is more open to discussion. But again, there was no finding of fact by the judge at all on any of the three convictions. I have nothing further unless the court has other questions. Thank you. Thank you. Good morning. May it please the court, counsel, your honors. My name is Marla McDivitt. I'm an assistant United States attorney, and I represent the United States in this appeal. The defendant claims he was the victim of ineffective assistance of trial counsel. Now, mind you, this is the very same trial counsel who represented the defendant in his first trial. That resulted in three court counts, one of armed bank robbery, another one of use of a firearm in relation to a crime of violence, and a felon in possession of a firearm. He was doing pretty well with his first time. That's correct, your honor. It's the government's decision that the defendant's claims now are nothing more than post-conviction disagreement with trial counsel's tactical decisions. Well, he says that the new tactic, which is kind of unusual, was one that counsel adopted on his own without consultation, without talking to him over his objections. Assume that was all true. Would that give him a claim? First of all, the record reflects in counsel's declaration. In what? Counsel's declaration? Yes, in counsel's declaration, he stated that he told the defendant about his strategy. Now you're saying those aren't the facts. I should assume those are the facts. This being hypothetical, rather. Very good. Assuming those are the facts, how was it prejudiced? The government had already presented evidence of the defendant's violent nature, not only in the first trial, but also in the second trial. Counsel, knowing about the evidence that was elicited in the first trial, fashioned a strategy in the second trial where the sole count is for the jury. It was conspiracy to commit armed bank robbery. The very essence of the conspiracy was whether or not there was an agreement. Okay, that's the second problem. Let's take the first problem. Was it if counsel had switched the strategies to say, we're going to try to prove your innocence by proving there was no conspiracy because you threatened all of these people with guns and forced them to go with you in a bank robbery and expect the jury to acquit him on the basis that he had forced them to go with him? Assume he said to his lawyer, you know, I think that's a policy strategy. No jury's going to acquit me on that basis. I'd rather get up and deny it. And counsel didn't tell him that he was doing this until well into the trial where he said, I want to take a stand. I don't like this strategy. You didn't discuss it with me. I don't approve of it. I'd rather do it a different way. If that were all true, would he have a claim for ineffective assistance, forgetting whether he had any prejudice? The government submits no, Your Honor. Case law supports counsel's strategy in the sense that the evidence presented not only by the government as to the defendant's violent nature, the defense theory was one of duress, that the other co-conspirators in this case, not only Dominic Uggen, who testified in the first trial that... Well, my question really is, does he have a right to participate in determining his defense? And does he have a right to, well, I guess to participate and not have a defense if he doesn't agree with the defendant over his objection? Well, that would fall under the tactical decisions of counsel. What happened here in the second trial? Is your answer no, he doesn't have a right to participate, but counsel can make the decision without consulting, without telling him? But counsel did tell his client. I would say no, Your Honor. You would say no what? That was a tactical decision on the part of counsel. Okay, and you're saying that the client does not have a right to participate in the decision if counsel doesn't want to talk to him? Under the case law cited by the government, those would fall under tactical decisions of counsel. Now, in this case, Your Honor, the defendant's claims that he was unaware of this new defense theory just doesn't ring true. The defendant's claims that counsel prevented him from testifying in the second trial, again, doesn't ring true. But why is it a reasonable tactic? I mean, Strickland protects tactical decisions, but the qualified defense has to be a reasonable tactic. Explain to me why you think this is a viable defense. Given the evidence that came out of the first trial, counsel fashioned a strategy to use the government's evidence as to the defendant's violent tendencies to the defense advantage. Now, counsel not only argued that defense theory, but counsel also in his closing arguments didn't concede any reasonable doubt, unlike in the case of Swanson that the defense has cited. Counsel also put the government's witnesses to the test under cross-examination. The record doesn't show the government's admittance that counsel was ineffective in his trial strategy and his defense theory and his cross-examination of witnesses in his closing arguments. And I rely on the cases submitted by the government in the brief concerning the conspiracy theory and the defense theory. Excuse me, the jurassic theory. Well, I guess my point is it seems to me that it's one thing to say we agreed to rob a bank, and to defend it by saying, oh, no, there was no agreement because I forced these people to gunpoint to rob it, is not exactly the kind of theory that's going to elicit a warm jury response. But yet again, that was the evidence that counsel had to deal with in the first trial. Well, you know, I think the two questions are related. One, it's difficult to imagine jurors. I think there is a legal argument that there's no conspiracy. The defendant forced them to do it. They didn't agree. Therefore, there's no conspiracy. Therefore, an abstract theory is innocent. I mean, I think there is a legal theory. I agree with Judge Thomas. I think it's very difficult to imagine a jury acquitting once you've given those facts. Yes, they did rob a bank. Yes, they did it together. But there's no conspiracy because the defendant threatened them with a gun and made them rob a bank. So you should acquit them. It's not a very appealing argument to a jury. But the first question is, is that a reasonable tactic for a lawyer to do, to say, let's try this defense? Maybe it is, maybe it isn't. The second question is, is it reasonable to take that kind of a tactic and do it? And now you have to assume the facts without telling the defendant who doesn't want to do that and wants to say he's innocent. Now, you know, there's a way you determine facts. An attorney submits an affidavit. The defendant submits an affidavit. If the facts are conflicting, you can either assume the facts given by the defendant, or you could have a hearing and make a factual determination. But there's no – the facts may well be what the lawyer says, but they're contested in the district court. So for purposes of this appeal, you pretty much have to assume the facts are given by the person, the defendant. Well, Your Honor, the record below, the testimony of the witnesses, the defendant's silence concerning the issue whether or not he was prevented from testifying, supports the district court's decision in denying this motion under Section 2255. The government submits that there was sufficient evidence in the record for the court to deny the motion. Well, he's not deprived of his constitutional right, we once decided, unless he leaps up in the middle of court and says to the judge, That was Mr. Partington who was here the other day. I think it was Partington v. Dad, where he said in one of our more noted decisions that a person who wants to testify isn't deprived of his right unless he gets up and overwhelms his attorney and says to the judge in front of the jury or somewhere, My attorney's depriving me of my right so I want to speak. Now, he didn't do that, so he wasn't deprived of a constitutional right. But that's a little different from the question of whether it's ineffective of counsel to pick a strategy that is not a terribly appealing strategy without consulting him and contrary to his desire to testify. But yet again, Your Honor, the record below reflects that the defendant waived his decision to testify. In fact, at the sentencing hearing in this case, the defendant did not tell the sentencing court that he was unsatisfied with counsel. He told the sentencing court that he had every faith in his counsel's representation of him. And going on to the sentencing hearing, counsel's or the defendant's claim that counsel didn't say anything at sentencing, that's not per se an effective assistance of counsel. The evidence had already been submitted at trial as to the gun being used in the conspiracy count of conviction. As to the other two qualifying predicate convictions, the defendant himself who testified at sentencing acknowledged he had these two prior serious violent felony convictions. Was there a requirement that a gun be used in each of the two prior? The two prior convictions concerned... They were violent felonies. They were violent felonies. But there wasn't any... That concerned the instant conviction. Well, the instant conviction, they put on testimony. The defense did, but he used a gun. The government presented testimony of that gun use. And so did the defense also? That was the defendant's strategy in using... I'm trying to agree with you for once. To say that there was not much he could say about the gun at sentencing since he had presented evidence that his client did use a gun. After the government had already presented evidence to that effect. I'm not easy to agree with. Your Honor, the government simply submits that the defendant's claims are nothing more than disagreement with counsel's strategy. In terms of testifying, he didn't tell the court he wanted to testify. In fact, he told the court at his sentencing that he was pleased and had every faith in his counsel. It's only now that he's filed this motion to vacate his conviction. Well, that was before you got him. After three strikes imposed against him, it started to dawn on him that the introduction of the gun evidence might not have been a good idea. I'm sure at sentencing, perhaps not understanding that, he would have said he was happy to testify. What caused him to announce his joy with his performance to counsel? That's not a usual announcement at sentencing. How did that come about? Counsel... The defendant spoke to the court, pleaded for leniency, yet at the same time, he told the court he was satisfied with his counsel's representation. This is the defendant on his own telling the court what he thought about his counsel, that he had every faith in him. So his claims that counsel misled him just doesn't mean true. Thank you, Your Honor. If there are any questions... Thank you very much. Thank you. I believe if you review the sentencing transcript, you'll find that James said something to the effect that my counsel told me I wasn't going to get a fair trial with this court, and I trust him. I think it probably goes to that statement more than I trust him on his strategy. Defense counsel's strategy to concede the armed robbery and all of the elements obliterated everything he had won in the beginning of the trial. Well, what was the alternative strategy? I mean, it seems to be an odd strategy, but what, in looking back on the full record, do you think, in hindsight, you should have done as a strategy in the second trial, given the evidence that was going to come in? He had a witness, James Marquez, who had put him at a different place on the night of the actual robbery. The same witness could have verified that he had been with him on one of the nights of the attempts as well. And according to James in his argument to the trial court on his 2255, he planned all along to put witnesses on that would have placed him elsewhere at both attempts during the time frame that the other witnesses were going to claim. When was the... There was testimony, wasn't there, about when the conspiracy took place? Yes. When the agreement was made, in a hotel room somewhere. The actual conspiracy was formulated early in April. The first attempt was alleged to be April 4th. Okay, but when the conspiracy was agreed upon, does he have an alibi for that, to say he was not present when the conspirators got together? Although, without him, there is no conspiracy. But... Yes, he did. He had an alibi for the incidents that they talked about as having times planned. Those are the implementations of the conspiracy. I'm talking about when the agreement was made to rob a bank, not when the attempts were made. When... How do you have an alibi for the time the conspiracy was made? There was testimony as to one incident where he was at a house with the other individuals who took part in the actual armed robbery, and those individuals said that he said, I'm going to rob a bank. But for that incident, all of the other incidents, he has an alibi for. They placed him at the actual attempts, and this was his idea, and he... So, I guess... He polished it. Because he had nothing to do with any of these things, he undoubtedly wasn't a member of the conspiracy. That was his plan. This was not his plan, this was not his action. And all the other people who actually robbed the bank were making up his role in planning. That's his contention, that they were making his role seem the dominant role so that they could get lesser sentences. That doesn't make any difference on conspiracy theory, though. He agrees to it, and there's an overt act by someone else, and he doesn't disavow it, and he's stuck on conspiracy. James claims that he never made these agreements. He never formulated this plan, that this was a plan that was told to him. He told them they were stupid. He told them it was not going to work. He mentioned a brother of one of the other persons. Pardon? The truth is correct. And despite that, they were so grateful for the advice that they then gave him money afterwards. Gave him money. And that's James's claim, is if he's guilty of anything, he's guilty of receiving stolen property. Well, he didn't have a lot of good choices, so... Well, the problem we have is that the cautionary instruction that the judge gave throughout the trial, that James had been acquitted of the conduct regarding possession of the weapon and so forth, is wiped out by his trial counsel strategy. And if that strategy is reasonable, then he would not have lost the game. He got a hung jury the first time on the conspiracy, didn't he? I'm sorry? He got a hung jury the first time? He got a hung jury on the conspiracy. They acquitted on the actual bank robbery. With a tactic that doesn't sound so brilliant, but it seems to have at least gotten him a hung jury. So he could have tried that tactic again. He could have tried that tactic again, and that was his contention was, I intended to try that tactic again. Maybe he would have had one more juror who fell for that. He could have. And they wouldn't have been a hung jury. Thank you, Your Honor. Okay, thanks very much. Thank you both very much. The case gets argued will be submitted. We'll take a brief morning recess. All rise. Court's been in recess. Thank you.
judges: Browning, Reinhardt, Thomas